**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 13-45-DLB-JGW**

**IN RE: THE ESTATE OF AUDREY DEINLEIN**           **PLAINTIFF**

vs.          **MEMORANDUM OPINION AND ORDER**

**UNITED STATES OF AMERICA**          **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

The United States moves for summary judgment in this action affecting property subject to a federal tax lien, claiming that it is entitled to recover $60,614.17 in proceeds from the sale of Decedent's condominium pursuant to federal tax liens filed against one of Decedent's three sons. The Estate of Audrey Deinlein also moves for summary judgment, arguing that Decedent's son Christopher did not have an interest in the condominium to which the liens could attach because either (1) Decedent had already given her son an advancement against his share of the estate; or (2) Decedent's son disclaimed his interest in the estate. The Court has jurisdiction over this removed action pursuant to 28 U.S.C. § 2410.

**I.    Factual and Procedural Background**

On October 4, 2011, Audrey E. Deinlein (hereinafter "Decedent") passed away. She was survived by three adult sons, Christopher Edwards Deinlein (hereinafter "Chris"), Ronald Jack Deinlein, Jr. (hereinafter "Jack") and Paul Edwards Deinlein (hereinafter "Paul"). (Doc. # 13 at 1). At the time of her death, Decedent owned a condominium,

1

located at 26 Grand Lake Drive in Fort Thomas, Kentucky (hereinafter "the condo"), that was subject to a properly recorded mortgage. (*Id.*).

Twelve years earlier, Decedent executed a Last Will and Testament (hereinafter "the will") that disposed of her real and personal property as follows:

> I give, devise and bequeath all of my tangible personal property, including household furnishings, jewelry, automobiles, personal effects, (but excluding cash), and *also any interest which I may own in real property used by me as a residence at the time of my death*, to my husband, Ronald Jack Deinlein. *If my said husband does not survive me, then all of the foregoing property shall pass absolutely and in fee simple and in equal shares to my three children, namely, Christopher Edwards Deinlein, Ronald Jack Deinlein, Jr., and Paul Edwards Deinlein.*

(Doc. # 13-2 at 2)(emphasis added). The will also included a residue clause, directing that any assets otherwise unaccounted for in the will should pass to the trustee under the Revocable Trust Agreement. (*Id.* at 3). There is nothing in the briefing or the record to suggest that the will was improperly executed or otherwise deficient.

Decedent's three sons all submitted competing applications to the Campbell County Probate Court (hereinafter "Campbell Court"), asking to be named executor of Decedent's Estate. (Doc. # 13-6). All three applications expressed concern about the other brothers' fitness to perform the requisite duties, as well as the propriety of the other brothers' financial transactions with Decedent. (*Id.*). On February 10, 2012, the Campbell Court appointed third party Laurie B. Dowell (hereinafter "Dowell") as fiduciary of the Estate and probated Decedent's will. (*Id.*).

Two weeks later, the three brothers and Dowell entered into a Settlement Agreement and Mutual Release (hereinafter "Settlement"), in which the brothers resolved the claims among them without any admission of liability. (*Id.* at 2). Chris agreed to "relinquish his

claim to be appointed executor of the Estate" and "renounce any further claims as a beneficiary of the Estate." (*Id.*). The Settlement then allocated responsibility for certain outstanding debts among the three brothers. (*Id.* at 2-3). Chris promised to bring the mortgage and condo utilities current as of March 31, 2012, pay off Decedent's Sears/Visa card and assume responsibility for Decedent's 2010 federal tax liability. (*Id.*). Jack and Paul agreed to pay condo fees through March 31, 2012. (*Id.*). The three brothers would be equally responsible for funeral expenses, headstone costs and administratrix fees. (*Id.*).

The Agreement further provided that "other than inter-family loans, any debt or claims against the estate that were incurred by any heir for his individual benefit, shall be assumed by that individual and he shall hold the estate harmless." (*Id.* at 3). Additionally, all debts, loans, gifts, and other transactions between Decedent and the three brothers "shall be deemed settled, satisfied, and conclusively resolved, and the Parties shall not be entitled to any further accounting concerning any such debts, loans, gifts, or other transactions." (*Id.* at 4).

Chris has had outstanding federal tax liabilities for several years. (Docs. # 13 at 3-4 and 13-7). The first Notice of Federal Tax Lien, recorded in Campbell County on May 30, 2006, shows an unpaid balance of income and employment taxes totaling $21,784.99. (*Id.* at 1). On November 13, 2007, a second lien was filed in Campbell County, reflecting income tax deficiencies in the amount of $53,071.02. (*Id.* at 2). Between 2008 and 2010, four more liens were filed against Chris for income and employment tax deficiencies. (*Id.* at 3-6). As of April 1, 2013, the total outstanding balance was $459,409.49. (Doc. # 13 at 3-4).

In an effort to ameliorate Chris' financial situation, Decedent wrote him eight checks, totaling $150,500, between 2000 and 2010. (Docs. # 13 at 3 and 13-1 at 9-16). Decedent also made two wire transfers, totaling $35,000, to Chris from her Raymond James investment account. (*Id.* at 17-18). Shortly before her death, Decedent told her sons that she wanted an accountability of debts. (Doc. # 13-1 at 19). Decedent also wrote a statement to this effect: ""Before my assets are divided, there should be accountability of debts. [illegible] Ring to Audrey. Baba's wedding ring to Phyl. Piano to Paul." (*Id.*). Chris now maintains, based on his history of financial transactions with Decedent and her wish that there should be "an accountability of debts," that Decedent gave him $185,500 with the intent that this sum would be an advancement against his share of the Estate. (Doc. # 13 at 3).

On January 1, 2012, Paul and Jack began making payments on the condo mortgage. (Doc. # 13 at 1-2). By April 8, 2013, they had reduced the mortgage from $104,351.69 to $87,935.66 and put the condo up for sale. (*Id.*). However, the Internal Revenue Service took issue with this attempt to sell the condo, alleging that its federal tax liens against Chris had attached to his one-third interest in the condo. (*Id.*). The Estate brought this issue to the Campbell Court's attention in a filing styled as a "Complaint/Motion Concerning Advancement." (Doc. # 1-1). The United States promptly removed the action to federal court. (Doc. # 1). After some negotiation, the United States agreed that Paul and Jack could sell the condo, provided that the proceeds were placed in escrow pending resolution of this dispute. (Doc. # 13 at 2). On April 8, 2013, the condo was sold for $303,000, with net proceeds totaling $198,339.56. (*Id.*). Paul and Jack signed the deed, but Chris did not. (*Id.*). The government now seeks to recover $60,641.17 of that sum,

4

which represents Chris' one-third share of the property minus one-third of the principal reduction.  (*Id.*).

## II. Analysis

### 1. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law.  *Id.*  Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 250.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* at 252.

### 2. Interplay Between Federal Tax Law and Kentucky Estate Law

The Internal Revenue Code authorizes the Government to satisfy a tax deficiency by imposing a lien on "all property and rights to property, whether real or personal, belonging to [the taxpayer]."  26 U.S.C. § 6321; *see also* 26 U.S.C. § 6331 (authorizing the Secretary of the Treasury to collect the tax if the deficient taxpayer neglects or refuses to pay within ten days after notice and demand).

Determining what constitutes "property and rights to property," as the term is stated in 26 U.S.C. § 6321, is ultimately a question of federal law. *United States v. Craft*, 535 U.S. 274, 278 (2002). However, this statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *Id.* (*quoting United States v. Bess*, 357 U.S. 51, 55 (1958)). Therefore, the court should "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999).

With this framework in mind, the Court will begin its analysis by determining what rights Chris has in the condo under Kentucky law. The parties stipulate that Decedent's Will devises any interest in real property "absolutely and in fee simple and in equal shares to her three sons." (Doc. # 13). Despite this language, the Estate asserts that Chris has no interest in the condo for either the following reasons: (1) Decedent gave Chris a $185,500 advancement on his share of the Estate; or (2) Chris disclaimed his interest in the Estate by signing the Settlement Agreement and Mutual Release. The Court will address each of these arguments in turn.

### 3. Kentucky Estate Law

#### a. Advancement

Under Kentucky law "[a]ny real or personal property or money, given or devised by a parent or grandparent to a descendant, shall be charged to the descendant or those claiming through him in the division and distribution of the *undevised* estate of the parent or grandparent." Ky. Rev. Stat. Ann. § 391.140(1)(emphasis added). The descendant who

receives such an advancement "shall receive nothing further from the estate until the shares of the other descendants are made proportionately equal with his, according to the descendable and distributable share of the whole estate, real and personal, devised and undevised." *Id.* Consistent with the statute's reference to an "undevised estate," the advancement doctrine only applies when a decedent passes away wholly or partially intestate. *Sandidge v. Ky. Trust Co.*, 402 S.W.2d 105, 107 (Ky. App. 1966).

Citing to *Sandidge*, the United States argues that the advancement doctrine cannot apply to the facts of this case because Decedent's will fully disposed of her assets. Rather than disputing this point, the Estate agues that the advancement statute should nevertheless apply for two reasons: (1) Decedent gave Chris $185,500 with the intent that it be treated as an advancement; and (2) this case is distinguishable from *Sandidge* because Decedent intended to treat her children equally.

The Estate asserts that a decedent's intent should control whether an asset is to be treated as an advancement. Instead of citing case law in support of its proposition, the Estate cites to a law review article critiquing Kentucky's advancement statute and advocating for a change in the law. *See* Carolyn S. Bratt, *Kentucky's Doctrine of Advancements: A Time for Reform*, 75 Ky. L. J. 341 (1986). Ignoring the fact that this Court is tasked with applying the law as written, rather than changing it, the Estate proceeds to apply the proposed test. Specifically, the Estate asserts that Decedent's statement to her sons, combined with her undated note stating "[b]efore my assets are divided, there should be an accountability of debts," evince an intent to treat her three sons equally. Because Decedent loaned Chris $185,500 prior to her death, the Estate believes that Chris already received his share of Decedent's assets, and therefore, did not inherit

7

an interest in the condo.

Within this argument lies a very circular effort to re-characterize the $185,500 as a loan. The Estate cites to Decedent's note as evidence that she intended the $185,500 as a loan, while simultaneously arguing that the loan is a debt, so Decedent must have intended it as an advancement. First, the Court notes that Decedent's intent is not as clear as the Estate suggests. Perhaps Decedent's direction "[illegible] ring to Audrey. Baba's wedding ring to Phyl. Piano to Paul" evinces an intent to satisfy her own debts to others, rather than receive repayment for debts owed to her. (Doc. # 13-1 at 19). Second, even if the Court were willing to accept Chris' interpretation of Decedent's note, it is unclear whether such a reading would actually benefit him. The Court does not see how the $185,500 constitutes a "debt," which suggests that the Decedent intended Chris to repay her, while also qualifying as an advancement. After all, an advancement is commonly defined as a "*gift* made with the intent that it shall be charged to the donee in distribution of the donor's estate," and therefore involves no repayment. *See Chism v. Chism*, 176 S.W.2d 101 (Ky. App. 1943)(emphasis added).

The Estate also maintains that *Sandidge* is distinguishable, as the court "did not apply the principle of the advancement statute [ ] because 'it is merely an expression of the legislative view of what is fair in an advancement situation–not a rule for effectuating a testamentary intention to achieve equality among children. Actually the statute ordinarily applies in cases where the deceased intended not to treat his children equally,' which is not the clear intent of the decedent in this matter before the Court." (Doc. # 15 at 5). The Court finds this position somewhat perplexing, as the Estate seems to argue that the advancement statute should apply to this case because Decedent intended to treat her

children equally, while citing to a passage that says just the opposite.

The Estate's ill-advised attempt to factually distinguish *Sandidge* notwithstanding, the Court simply cannot overlook the fact that Kentucky law does not apply the advancement doctrine to testate estates. In this case, Decedent passed away with a properly executed Last Will and Testament, which the Campbell Court probated on February 10, 2012. This will included a residue clause devising all remaining assets to the trustee under the Revocable Trust Agreement, so there is no indication that Decedent even passed away partially intestate. Under these circumstances, the Estate found it best to advocate for a change in the law, but this Court must apply the law as it exists today. And Kentucky law does not apply the advancement statute to testate estates. Therefore, the Court does not believe that Chris received an advancement on his share of the Estate, so as to relieve him of the devised one-third interest in the condo.

      **b.    Disclaimer**

Under Kentucky law, a person can disclaim their interest in an estate. Ky. Rev. Stat. Ann. § 394.630. In such situations, "the property or interest disclaimed devolves as if the disclaimant has predeceased the decedent," unless the decedent or donee of the power has otherwise provided. *Id.* "A disclaimer relates back for all purposes to the date of the death of the decedent or the donee of the power." *Id.*

Because Kentucky's disclaimer statute creates a legal fiction that the disclaimant pre-deceased the decedent, which relates back to the date of the decedent's death, it would seem that a disclaiming taxpayer would not have an interest in the subject property under Kentucky law. However, the United States Supreme Court has specifically rejected this logic, holding that a disclaimer under state law cannot defeat federal tax liens. *Drye*

*v. United States*, 528 U.S. 49 (1999). Reasoning that a potential disclaimant "inevitably exercises dominion over the property," simply by determining whether the subject property will remain with him or pass to a known other, the Court found that the disclaimer statute gave the taxpayer the power to channel the estate's assets. *Id.* at 60-61. Therefore, the taxpayer retained some rights in the property under state law, despite the disclaimer. *Id.*

The Estate attempts to distinguish *Drye* from this case by pointing out that the decedent in that case died intestate with only one heir at law, a son who disclaimed his interest and thereby passed it to his daughter. *Id.* at 52. She then created a spendthrift trust, free from creditor's claims, with proceeds that could be used by her and her parents during their lifetime. *Id.* In this case, Chris and his brothers resolved their disputes over the Estate with a Settlement, wherein Chris agreed to disclaim any further interest in the Estate. However, the Estate does not explain why these facts dictate a different result. While *Drye* dealt with a more transparent effort to avoid federal tax consequences, this Court believes that the holding applies with equal force to the facts here. Therefore, the Court finds that Chris' disclaimer did not completely relieve him of his one-third interest in the condo, as he exercised dominion over the property simply by allowing it to pass to a known other.

Having determined that Chris retains an interest in the condo under state law, the Court must now consider whether that interest qualifies as 'property' or 'rights to property' within the meaning of 28 U.S.C. § 6321.

### 4. Federal Tax Consequences

To determine whether a taxpayer's state law rights constitute 'property' or 'rights to property' within the meaning of 26 U.S.C. § 6321, "'[t]he important consideration is the

breadth of the control the [taxpayer] could exercise over the property.'" *Drye*, 528 U.S. at 61 (*quoting Morgan v. Comm'r*, 309 U.S. 78, 83 (1940)). As discussed above, a disclaiming heir exercises some measure of control over the property simply by determining whether it should pass to a known other. The *Drye* Court found that this "control rein [ ] held under state law . . . rendered the inheritance 'property' or 'rights to property' belonging to [the taxpayer] within the meaning of 6321, and hence subject to federal tax liens." *Id.* "Once it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the federal tax lien provision], state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States." *Id.* at 52 (*quoting United States v. Bess*, 357 U.S. 51, 56–57 (1958).

Decedent's will devised a one-third interest in her condo to Chris. As discussed above, the Estate's efforts to characterize the money given to Chris as an advancement against his share of the Estate are unavailing because the advancement statute simply does not apply to testate estates. His interest in the condo is thus unaffected by prior financial transactions with Decedent. The Estate cannot successfully argue that Chris' disclaimer relieves him of his interest in the condo because he "inevitably exercises dominion over the property," simply because he is able to determine whether it will stay with him or pass to a known other. As explained in *Drye*, Chris' ability to control his one-third interest in the condo is sufficient to constitute 'property' or 'rights to property' under 26 U.S.C. § 6321. Having found that Chris has a sufficient interest in the condo to satisfy § 6321, the Court concludes that the federal tax liens filed against him attached to his one-third interest in Decedent's condo.

**III.    Conclusion**

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The United States' Motion for Summary Judgment (Doc. # 14) is **granted**;

(2) The Estate's Motion for Summary Judgment (Doc. # 15) is **denied**; and

(3) A Judgment shall be entered contemporaneously herewith.

This 23rd day of July, 2014.



G:\DATA\Opinions\Covington\2013\13-45 MOO re Cross MSJs.wpd